IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LOUIS BARTLEBAUGH,
    Petitioner,
    v.     : Case No. 3:08-cv-74-KRG-KAP
RAYMOND SOBINA, WARDEN,
S.C.I. ALBION,
    Respondent

## Report and Recommendation

### Recommendation

Petitioner is at S.C.I. Albion, serving an aggregate sentence of 15 to 30 years imprisonment imposed on September 11, 2003, by the Court of Common Pleas of Cambria County (Honorable Norman A. Krumenacker, III). Petitioner filed a petition for a writ of habeas corpus, see 28 U.S.C.§ 2254, alleging that his convictions and sentence violate the United States Constitution. I recommend that the petition and a certificate of appealability be denied.

### Report

On May 20, 2003, a jury convicted petitioner of rape, aggravated assault, simple assault, recklessly endangering another person, terroristic threats, unlawful restraint, indecent assault, false imprisonment, and disorderly conduct. The evidence is described by Judge Krumenacker in his Pa.R.App.P. 1925 opinion denying post-trial motions:

    The victim of these crimes, Susan Nail (Nail), testified at the trial that she began dating Bartlebaugh in December of 2000 and that the first incidence of physical abuse occurred in February of 2001 when Bartlebaugh slapped her face and pulled her hair. In late February of 2001, Bartlebaugh moved to Charlotte, North Carolina and in March of 2001 Nail moved there with him. While living in Charlotte Nail testified that on one occasion Bartlebaugh

punched her in the face, knocked her to the ground, and began choking her.

A few days later, the couple moved from Charlotte to Daytona Beach, Florida where Nail was forbidden to answer the door or telephone when Bartlebaugh was not home and she was not permitted to go anywhere alone. During their time in Florida, physical abuse continued on an almost weekly basis. Nail testified that on one occasion, Bartlebaugh wanted to have sex with her and she refused at which time he forced her down, held her arms, and had sex with her despite her protests. Following this incident Nail testified that Bartlebaugh admitted to her that his conduct would constitute rape and that it would never happen again.

After each incident of violence, Bartlebaugh would apologize to Nail and promise that he would change and not beat her again. When asked why she never left him Nail testified that she did not leave in part because she was afraid of him, due to his violence and threats he had made to find her and kill her if she left, and in part because she loved him and wanted to believe him when he promised he would change. Despite this combination of fear and love, Nail fled from Florida with the aid of some friends and returned to Johnstown to live with her brother. Nail testified that she eventually went back to Florida and Bartlebaugh after numerous telephone calls from him in which he begged her to come back and promised to change. After returning to live with Bartlebaugh, Nail filed charges against him on two separate occasions...[Nail refused to cooperate in the prosecution of these charges.] After this second incident Nail testified that Bartlebaugh threatened to find her and kill her if he was ever put in jail again because of her. Nail testified that on several occasions Bartlebaugh threatened to send her home in a body bag or that she would be found floating in the Halifax River. ...

... The charges in the case *sub judice* arose out of a series of incidents occurring over the weekend of October 12, 2002. Nail testified that on Saturday October 12, 2002, she weighed approximately ninety-eight (98) pounds and that earlier in the week Bartlebaugh accused her of lusting after Bartlebaugh's brother. Nail testified that she went to her brother's house that day because she was afraid that Bartlebaugh would beat her when he got home from work and that eventually Bartlebaugh called her promising her he would not beat her if she came home which she did not do. Eventually Bartlebaugh and his ex-wife Julie showed up at Nail's brother's home and Bartlebaugh again promised not to beat her and to come with him and Julie to Julie's home to do laundry at which time Nail left with them.

Eventually Nail and Bartlebaugh returned home from Julie's and began watching television. At some point in the evening Nail testified that, Bartlebaugh started poking her and calling her a whore and slut at which point a brief argument ensued. Nail

testified that Bartlebaugh then grabbed her off the couch, punched her knocking her to the floor where he continued to punch her head and kick her in the chest. During this assault, Nail testified that she begged Bartlebaugh to stop by proclaiming her love for him but that he continued to hit and kick her. At some point Nail testified that she told Bartlebaugh she could not breath[e] and he stopped his attack.

Following this attack Nail testified that she told Bartlebaugh she wanted to go to the hospital because she was having difficulty breathing and was in pain but that she refused to take her saying "good .. I hope you die you bitch." ...

Nail testified that on Sunday night [October 13] Bartlebaugh came into the bedroom and wanted to have sex with her but that she refused saying she was in pain and that they should wait until she healed. Bartlebaugh continued to insist on having sex and eventually Nail acquiesced due to her fear of receiving another beating.

The following day, Monday October 14, Nail testified that she heard Bartlebaugh leave around 7 a.m. for work but did not try to flee or call for help due to his prior threats. Nail testified that around 11:30 a.m. Nicki Kist entered her room and eventually convinced Nail to show her face to Nicki. Nicki then called Nail's brother who arrived and drove her to Conemaugh Valley Memorial Medical Center (Conemaugh) emergency room. At Conemaugh, Nail informed the E.R. personnel of what had happened to her, was photographed by hospital staff, and was treated for her injuries. She was released from the hospital on October 17.

Jonathan Barnhart, M.D., (Barnhart) testified that he saw and treated Nail at the E.R. on October 14. Barnhart testified that he took a history of the incident from Nail and that the history she gave him was consistent with the history she gave other personnel earlier and with her injuries. Barnhart testified that Nail was diagnosed with bruising, a clinical rib fracture, a ruptured eardrum, and a traumatic pneumothorax to her left lung that caused the lung to partially collapse. Barnhart testified, within a reasonable degree of medical certainty, that the pneumothorax was most likely the result of blunt force trauma to the chest and that Nail's injuries were consistent with the report of the attack she gave him.

Commonwealth v. Bartlebaugh, No. 2669-2002 (Cambria C.P. March 2, 2004), in vol. 5 of the state court records.

Petitioner was represented through trial by Richard Corcoran, Esquire, but he was discharged for failing to file a

timely brief after filing a notice of appeal and a statement of issues under Pa.R.App.P. 1925. After reinstatement of the appeal, Robert J. Freeman, Esquire, filed the appellate brief asserting that Judge Krumenacker made four errors: 1) admitting evidence of prior uncharged allegations of bad conduct without requiring prior notice from the prosecution; 2) admitting evidence of prior incidents of sexual aggression; 3) sentencing petitioner above the aggravated range of the recommended sentence for the charge of rape; and 4) failing to arrest judgment due to the insufficiency of the evidence. All of these were raised as state law issues, and except for a citation to <u>Brady v. Maryland</u> in the course of stating that there was no <u>Brady</u> claim, Freeman did not even cite any federal cases. Pennsylvania's sufficiency of the evidence test parallels the federal law for sufficiency of the evidence in <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979), but Freeman's argument was a purely fact-bound one aimed at why the jury should not have found that Bartlebaugh had obtained Nail's consent by threat of force. The Pennsylvania Superior Court found the sentencing claim to be waived and denied the balance of the claims on the basis of Judge Krumenacker's Rule 1925 opinion. <u>Commonwealth v. Bartlebaugh</u>, 1381 WDA 2004 (Pa.Super. June 30, 2005), in vol. 8 of state court records. The Pennsylvania Supreme Court denied petitioner's petition for allowance of appeal without

comment. Commonwealth v. Bartlebaugh, 383 WAL 2005 (Pa. November 30, 2005).

On July 6, 2006, petitioner filed a pro se petition for relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 et seq. Judge Krumenacker appointed Joseph R. Green, Esquire, to represent petitioner in the PCRA proceedings, held a hearing on September 7, 2006, and denied the petition on January 2, 2007. The PCRA petition, hearing transcript, and Judge Krumenacker's Rule 1925 opinion are in vol. 7 of the state court records.

Green appealed from the denial of the PCRA petition, asserting six claims of Corcoran's ineffectiveness as trial counsel for failing to: 1) offer a medical expert; 2) examine discovery materials; 3) present a motion regarding victim's sexual conduct; 4) present character witnesses; 5) offer mitigating evidence at sentencing; and 6) request a psychological examination of victim. Green also asserted Freeman's ineffectiveness as appellate counsel in "failing to raise all viable issues," including Corcoran's ineffectiveness. Green's brief and the Pennsylvania Superior Court affirming the denial of the PCRA petition are found in vol. 9 of the state court records. Commonwealth v. Bartlebaugh, 1962 WDA 2006 (Pa.Super. January 3, 2008).

Petitioner then filed a nine page petition for a writ of habeas corpus, asserting three claims: 1) the trial court violated

Federal Rules of Evidence 801(a) and 801(c) by "allowing the prior hearsay bad act testimony"; 2) "all issues previously raised in Direct Appeal and PCRA Petition"; and 3) the trial court violated Federal Rule of Evidence 412.1(b) because "trial counsel did not seek to introduce evidence of prior sexual relationship with victim in order to prove consent.

There are three questions which a federal court considering a claim in a habeas corpus petition must ordinarily answer "yes" to before it can grant relief: 1) is this claim a sufficiently supported claim that federal law has been violated; 2) is this claim properly presented, that is, is it timely and was it properly exhausted as a federal claim in the state court; and 3) was the rejection of this claim by the state courts unreasonable? The first question is usually routine, the second requires a relatively mechanical examination of the procedural history of the case, and the third requires the closest scrutiny of the record.

Here, however, petitioner fails to get past the first hurdle. His first and third claims make no sense at all because the Federal Rules of Evidence did not govern the admission of evidence at his trial. His second claim, a catchall statement attempting to obtain review of any possible trial or appellate error, fails to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Rule 2(c)

requires a habeas petitioner to "specify all grounds for relief available to petitioner" and "state the facts supporting each ground." See Mayle v. Felix, 545 U.S. 644, 649 (2005)(commenting on the heightened pleading requirements).

Respondent has nonetheless replied to what respondent conjectures may be petitioner's intent to present as federal claims the claims raised by Freeman and Green in petitioner's direct and collateral appeals. Because the petitioner's three claims on direct appeal (leaving aside the defaulted sentencing claim) raised only state law issues, they cannot be repackaged here as federal claims. Even if the sufficiency of the evidence claim were deemed exhausted because federal and state law are in essence the same, petitioner waives that claim by failing to explain in the least why the evidence is insufficient.

Petitioner's counseled collateral attack on his conviction made seven Sixth Amendment claims of ineffectiveness of counsel. All were addressed by Judge Krumenacker and by the Pennsylvania Superior Court. The relevant federal precedent, Strickland v. Washington, 466 U.S. 668 (1984), requires petitioner to prove not only unreasonably deficient performance by counsel, but also prejudice, that is, a reasonable probability that counsel's performance caused a more detrimental outcome to petitioner. Strickland has always commanded deference in any review of counsel's exercise of professional judgment and trial

7

strategy, but AEDPA requires a second layer of deference in reviewing a state court's application of Strickland, because the petitioner must prove that the state court's rejection of the Strickland claim was unreasonable. Knowles v. Mirzayance, 129 S. Ct. 1411, 1413 (2009). Petitioner fails to assert a claim that the state court's rulings on his ineffectiveness of counsel claims were unreasonable, and makes no effort to show that the state court determinations were unreasonable. Review of the record fails to suggest that any of the state court rulings were even incorrect.

Petitioner claimed Corcoran was ineffective for failing to offer expert medical testimony when the seriousness of the victim's injuries was an element of aggravated assault. The Superior Court noted that petitioner failed to comply with Pennsylvania law for raising such claims by articulating what evidence was available and what witness was willing to offer such evidence, and that in any case Corcoran's performance in cross examining Doctor Barnhart, the prosecution's expert, was not ineffective.

Petitioner claimed Corcoran was ineffective for failing to review a discovery packet, and the Judge Krumenacker found this claim to be false as a matter of fact, referencing the spot in the PCRA hearing transcript in which Corcoran testified that he had, in fact, reviewed the materials. The Superior Court deferred to

the trial court's analysis of the facts. Petitioner does not suggest that this analysis is wrong, much less explain why.

Petitioner claimed Corcoran was ineffective for failing to introduce evidence of prior consensual sexual conduct by petitioner with the victim, and the Superior Court found this claim false as well, noting that Corcoran had not only filed a motion to present the evidence, he was permitted to do so at trial. The record, which petitioner does not even cite, supports the state court's finding.

Petitioner claimed that Corcoran was ineffective for failing to offer specific character witnesses, but the Superior Court found this claim waived because the hypothetical character witnesses named in the appellate brief were different from the ones he named at the PCRA hearing, all of whom were all unavailable at the PCRA hearing. Additionally, the state court credited Corcoran's explanation that he did not want to open the door to further evidence of petitioner's prior bad acts by offering character testimony. Petitioner offered and offers nothing to contradict either of these explanations for rejecting his claim, much less why the record shows such ineffective assistance that any other conclusion is unreasonable.

The state courts found petitioner's fifth ineffectiveness of counsel claim, based upon Corcoran's alleged failure to introduce mitigating evidence at sentencing, to be meritless. Both

Judge Krumenacker and the Superior Court observed that petitioner was unable even to describe any mitigating evidence. Addressing petitioner's claim that Corcoran was ineffective for failing to request a psychological examination of the victim, the Superior Court cited Corcoran's testimony at the PCRA hearing that petitioner never mentioned that the victim had any psychological impairments and that nothing in the discovery materials indicated that she might be incompetent. The state court did not need to go further to ask whether such a motion would have had any chance of succeeding, but it did and concluded that petitioner had not remotely complied with Pennsylvania's requirement that "compelling reason" be shown for a psychological examination.

As for petitioner's claim that Freeman and Corcoran had been ineffective in failing to assert the Commonwealth's "misconduct" the Superior Court adopted Judge Krumenacker's rejection of this claim because of petitioner's failure to identify any specific allegations of misconduct, or for that matter any other claims that should have been raised.

A certificate of appealability should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(C)(2). Petitioner has made no colorable showing of any federal claim. To the contrary, the record presents a classic example of a long time perpetrator of domestic abuse who withdrew a negotiated plea on the

gamble that the battered victim would once again fail to follow through with a prosecution. He lost his gamble and the trial judge, after what was a routine trial without any novel issues, imposed a lengthy sentence. The length of the sentence, not the existence of any colorable issues, is the reason for the habeas corpus petition. No certificate of appealability should issue.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 4 November 2010

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Louis Bartlebaugh FK-3970
S.C.I. Albion
10745 Route 18
Albion, PA 16475